ORDERED.

Dated: April 10, 2018

_____
Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

CLINICAL PET OF OCALA, LLC,

    Debtor.
_____/

Chapter 11
Case No. 3:16-bk-4646-JAF

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This is a yet-to-be confirmed Chapter 11 case and before the Court are the following motions filed by secured creditor 1ST MANATEE BANK ("Manatee Bank"): i) Motion to Convert Case to Chapter 7 (Doc. 242); ii) Emergency Motion to Terminate Use of Cash Collateral (Doc. 243); and iii) Emergency Motion for Relief from Automatic Stay (Doc. 246). Also before the Court is the Amended Motion to Extend Time to Make Adequate Protection Payments filed by debtor CLINICAL PET OF OCALA, LLC (the "Debtor"). (Doc. 261). On March 12, 2018, the Court conducted a trial on these four motions. The parties filed written closing arguments on March 26, 2018. (Docs. 269, 270). Upon the evidence and argument presented, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

## BACKGROUND

On December 22, 2016, the Debtor filed a voluntary Chapter 11 petition. (Doc. 1). Manatee Bank filed a proof of claim, asserting a secured claim in the amount of $4,623,078. (Claim 6). Exhibits attached to Manatee Bank's proof of claim list the collateral securing the debt owed to Manatee Bank. (Claim 6 Part 2 at 21-24). The subject collateral is essentially all of the various business assets of the Debtor; including cash, accounts receivable, equipment, and other assets. Ganesh Arora and Shiwani Arora (the "Principals") are the principals of the Debtor. The Principals filed a joint individual Chapter 11 case in August 2017, as case no. 3:17-bk-2961.

In December 2017, the Court entered its Third Interim Order Authorizing Use of Cash Collateral pursuant to § 363 of the Bankruptcy Code (the "Cash Collateral Order"). (Doc. 235). The Cash Collateral Order requires the Debtor to make monthly adequate protection payments in the amount of $21,000. (Doc. 235 ¶ 10(a)). The Cash Collateral Order requires weekly collateral reports and monthly operating reports. (Doc. 235 ¶ 10(b)-(c)). The Cash Collateral Order also prohibits salary payments to the Debtor's officers. (Doc. 235 ¶ 2). This provision effectively overrides the Court's previous order, styled as Order Granting Interim Compensation of the Debtor's Director and His Wife (the "Salary Order"), which had permitted the Debtor to pay a salary to the Principals so long as all post-petition obligations (including adequate-protection payments) were current. (Doc. 51 at 2). The Cash Collateral Order was an agreed order resulting from a contested matter, and the change regarding salary payments was bolded in the order.

In early February 2018, Manatee Bank filed its three motions presently before the Court. (Docs. 242, 243, and 246). Manatee Bank seeks to convert the case to Chapter 7 based on: a) diminution of estate property through the Debtor's unauthorized use of cash collateral; b) failure to comply with prior orders of the Court; c) failure to confirm a Chapter 11 plan; and d) alleged

gross mismanagement by current management. (Doc. 242). Manatee Bank seeks to terminate the Debtor's use of cash collateral on the basis that the Debtor has failed to make timely adequate-protection payments and has continued to pay a salary to the Principals in violation of the Cash Collateral Order. (Doc. 243 at 2). Manatee Bank also seeks relief from the automatic stay based on the Debtor's failure to make adequate protection payments, improper payment of salaries, and diminution of the collateral. (Doc. 246). Manatee Bank seeks relief from the stay in order to pursue *in rem* actions against the collateral. (Doc. 246 at 3).

In March 2018, the Debtor filed an amended motion seeking an extension of time to make adequate protection payments. The Debtor alleges that critical equipment used in the Debtor's business operations broke down and required repairs which will cost between $15,000 and $30,000. (Doc. 261). Debtor's motion and Manatee Bank's three motions were tried together.

## FINDINGS OF FACT

The Debtor operates a radiology therapy and imaging practice in Ocala and The Villages. The Principals own the primary business premises of the Debtor, which they lease to the Debtor. Ganesh Arora is a medical physicist; Shiwani Arora is a microbiologist.

As of trial, the remaining balance owed to Manatee Bank was roughly $3.8 million. The Debtor was timely and current on all adequate protection payments through November 2017. The Debtor is delinquent on its December 2017, January 2018, February 2018, and now March 2018 adequate-protection payments—for a total of $99,000 past due. The Debtor attributes this to the breakdown of a critical radiation therapy machine, called a tomotherapy machine, which is responsible for roughly 70% of the Debtor's gross revenue. The tomotherapy machine is a large machine installed within a specially constructed area on the Debtor's business premises. The Debtor's business premises were specifically built for radiation therapy, with portions

3

containing leaded concrete walls that are several feet thick. According to the evidence, simply removing the tomotherapy machine from the premises could cost as much as $20,000. The Debtor contends that it is working on agreements to obtain capital to make these repairs.

Manatee Bank contends that the Debtor's business model has simply failed. The weight of the evidence supports Manatee Bank's contention. The Debtor's accounts receivable diminished prior to November 2017 and continue to diminish. Along with its petition, the Debtor filed a proposed budget and cash flow which anticipated $195,000 in revenue the first month of its bankruptcy. The budget anticipated revenue to grow to $250,000 per month by the fourth month. The Debtor has only met this proposed monthly revenue inflow one month in the year this case has been pending. The month the Debtor met its revenue projections was the month it received a onetime payment from Medicare for taking part in a large imaging study called the IDEAS Study.[1] The Debtor plans to increase revenue by partnering with "integrated" medical-provider networks that share and refer patients (i.e., that follow a captive customer model). The Debtor argues that, in March 2018, its participation in a new integrated medical network has increased its revenue by 123% on top of the previous month's revenue. However, on cross exam, Ganesh Arora admitted that this 123% increase is the projected increase and that the increase will amount to less than $90,000, in absolute dollar terms, for the month of March 2018. This amount is less than the Debtor's monthly revenue prior to filing its petition and substantially less than its projected revenue of $250,000 per month.

Further, tangible personal property tax liabilities remain outstanding and continue to grow with respect to certain items of collateral such as the tomotherapy machine. The governmental taxing authorities' liens on the tangible assets are superior to Manatee Bank's lien,

---

[1] https://www.ideas-study.org/

thus diminishing what value remains available to Manatee Bank in the collateral as the tax liabilities grow.  Additionally, there is no dispute that the Debtor's cash-on-hand is diminishing at a steady rate, thus diminishing cash collateral and impairing the Debtor's ability to operate.

Finally, the Debtor admits that it drafted unauthorized paychecks to the Principals while delinquent in its adequate protection payments, in violation of the Cash Collateral Order and the Salary Order.  (Doc. 51).  While not all of these drafted paychecks were cashed, the Debtor admits that $10,780 in unauthorized checks were cashed in December 2017.  (Doc. 269 at 5).

## CONCLUSIONS OF LAW

The Court previously granted the Debtor authority to use the collateral securing Manatee Bank's loans.  The chief question presented is whether that authority should be terminated.  Section 363(c)(2) of the Bankruptcy Code provides that the court shall prohibit or condition use of cash collateral as is necessary to provide adequate protection for the creditor's interest in the collateral.  "The purpose of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for."  In re Sharon Steel Corp., 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993); In re Best Products Co., 149 B.R. 346, 348 (S.D. N.Y. 1992) (adequate protection payments protect a secured creditor against decline in value of collateral used by the estate).

In the case of In re Sharon Steel Corp., the bankruptcy court determined that the debtor (a steel production company) should not be allowed to use cash collateral due to the debtor's "unduly optimistic" business plan for its use of the collateral.  Sharon Steel, 159 B.R. at 172.  The collateral at issue was essentially the same collateral at issue in the instant case—i.e., all of the assets of the business.  The creditors in Sharon Steel conceded that they were oversecured but denied that this equity cushion constituted adequate protection for the creditors' collateral.  Id. at 179.  The equity cushion was the only protection offered by the debtor.

The debtor presented a business plan to resume steel production, reduce operational costs, and increase revenue. The court determined the equity cushion was not sufficient adequate protection because the business plan was "unduly optimistic." The court stated that the debtor "fail[ed] to see the barriers" to its success and that, "[w]ithout new capital to permit this [d]ebtor to make needed capital [improvement] expenditures to make it competitive and to provide working [operational] capital, the Debtor will again be unable to sustain operations within a short time." Id. at 173 (bracketing added). Apparently, no new debt facility was available at that time. Broadly speaking, Sharon Steel bears a strong resemblance to the instant case.

Here, the Court concludes that it is appropriate to terminate the Debtor's use of cash collateral in light of its failure to make multiple adequate protection payments, its unauthorized use of cash collateral, and the continued diminution in value of Manatee Bank's collateral. The evidence does not show that Manatee Bank's collateral can be adequately protected going forward, nor is there any credible evidence that the Debtor will be able to bring its adequate protection payments current. The Court will lift the automatic stay to allow Manatee Bank to pursue *in rem* actions against the collateral.

However, the Court will deny Manatee Bank's motion to convert the case. This denial is without prejudice to re-raising the issue of conversion. The Court concludes that administration by a Chapter 7 trustee for the purpose of avoiding transfers of cash collateral, for the benefit of one creditor, is not efficient nor in the interests of all creditors.[2] The Court will deny the Debtor's motion for an extension of time to bring the adequate protection payments current. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

---

[2] The Court may reconsider this decision if Manatee Bank underwrites the avoidance-action litigation costs of the Chapter 7 trustee and agrees to apportion a "cutout" of the recovered proceeds for all other unsecured creditors.